*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re WEBB/SHEARER, Minors.

UNPUBLISHED
October 26, 2023

No. 365347
Mecosta Circuit Court
Family Division
LC No. 20-006653-NA

Before: RICK, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

Mother appeals as of right an order terminating her parental rights to five children under MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions leading to adjudication), (c)(*ii*) (failure to rectify other conditions), and (j) (likelihood of harm if children returned to parent). On appeal, she argues that no statutory grounds for termination existed and that the trial court erred in its best-interests decision. We affirm.

## I. FACTUAL BACKGROUND

Mother has a history with Children's Protective Services (CPS) extending back to 2017. The current proceedings initially began with a petition being filed in relation to the father of the four youngest children,[1] who was accused of sexually abusing two of those children. All five children were initially placed with mother and her husband. The children were removed, however, when it came to light that they had been living in deplorable conditions. A petition filed in this case noted that the children were filthy and were not being fed regularly, and that there was a lock on the refrigerator door. Testimony from the termination hearing indicated that the children sometimes resorted to eating out of the garbage. The children told CPS workers that their stepfather hit them with his hand or with a paddle. The children had access to lighters, which were kept in mother's purse, and would burn each other with them. In addition, one of the children had a severely infected injury on his foot, for which mother had not sought medical attention. This child had also nearly been hit by a car while being supervised by mother. None of the children

---

[1] The oldest child has a different father, who was not involved in the instant proceedings. The father of the four youngest children relinquished his parental rights to them.

attended school regularly. When the children were removed from mother's custody and temporarily placed in foster care, it was discovered that the children needed help with things such as learning how to use the bathroom inside and how to wear clothes and shoes for extended periods.

Regarding the conditions of the home, witnesses described the home as unusually deplorable and dangerous, with upturned, exposed nails and other hazards immediately accessible by the children. The petition noted that the home was "[e]xtremely dirty with food residue and trash strewn throughout . . . as well as alcohol bottles in [mother and stepfather]'s bedroom." Dirty laundry was left in a large pile, and mother had no clean clothing or bedding for the children. After many months of services, mother had still not learned how to safely supervise the children. She had a job and sufficient income, but was still finding it difficult to provide food for visitations and had still not obtained proper housing. As a result, the court terminated her parental rights. This appeal followed.

## II. ANALYSIS

### A. STATUTORY GROUNDS

Mother contends that petitioner, the Department of Health and Human Services (DHHS), did not adequately prove any grounds for termination and that certain reunification efforts were inadequate. We disagree.

To terminate parental rights, the trial court must initially find, by clear and convincing evidence, a statutory ground for termination, MCL 712A.19b(3). This Court reviews for clear error the trial court's factual findings and its ultimate determination that a statutory ground has been established. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). A reasonable-efforts finding is also reviewed for clear error. *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021). A finding is clearly erroneous if, even if some evidence supports it, the reviewing court is nevertheless left with the firm and definite conviction that the lower court made a mistake. *In re Mason*, 486 Mich at 152.

MCL 712A.19b(3) states, in relevant part:

> The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions,

the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Mother first contends that the trial court erred by finding that adequate housing remained a barrier because she had made improvements to the home that she and her husband were evidently in the process of purchasing. The record indicates that as of June 2022, the furnace in the home was not functional. A county building official had listed a great number of things that needed to be fixed or installed for the house to have a certificate of habitability. As of August 29, 2022, the home had a functional refrigerator and shower but it was still not habitable because it still had no heat source. There was no official approval for occupancy, and the children's caseworker, Kim Gager, was concerned about the wiring in the house, as a number of devices and appliances were plugged in via a single long extension cord. Gager stated that she had been "willing and able to provide assistance if [mother] needed it" but that mother always said she was about to move into a new home and did not need help. It seemed to Gager that mother was focused on having a single-family home and did not want an apartment or mobile home. Mother admitted that she did not ask DHHS for any help with housing. She also admitted that the heat for her home was "still getting there," but she said that she had purchased a furnace. The termination hearing was set to take place in November in Michigan, and the home still had no heat source. Given the above testimony, we conclude that the trial court did not err in finding that issues with adequate housing continued to exist.

Mother next contends that the trial court erred by concluding that she had not rectified her issues with properly parenting and supervising the children. She argues that her poor reports from parenting time were a result of the fact that visitations occurred outside, in a park, where it was difficult to control the children. But contrary to mother's argument, only a portion of the visitations occurred in a park, and the record indicates that even when parenting time took place indoors, mother struggled to manage and properly parent the children. Thus, the trial court did not err by finding that mother had failed to make progress toward improving her parenting skills.

Relatedly, mother raises an argument about the adequacy of parenting-time services. Unless there are certain aggravated circumstances, "[u]nder Michigan's Probate Code, [DHHS] has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017); see also *In re Rippy*, 330 Mich App 350, 355; 948 NW2d 131 (2019). Mother contends that the services offered by DHHS to help improve her parenting skills must have been unreasonable because they were not working. This is not a logical argument. That the services were not working does not mean that they were unreasonable. A Family Supportive Services (FSS) worker, Jessica Deverman, testified that she tailored the educational portions of visitations to mother's needs by meeting with her without the children present, and by offering very specific feedback to help mother learn

parenting skills. Deverman said that her organization also tried to work with mother's therapist to try to get mother to understand that she needed to improve her parenting skills. Another FSS worker spoke about trying different techniques "to see what worked for the family." Thus, mother's argument on this point lacks merit.

Mother also contends that she was making sufficient progress, such that the court should have found that conditions leading to adjudication were likely to be rectified in a short amount of time. The record does not support this argument. Deverman stated that mother improved at times but did not have sustained progress during visitations. Mother would focus on complaining about her ailments or things going wrong at her job instead of focusing on the children. Deverman said that "our workers [were] having to parent the parents," that is, mother and her husband, in an attempt to keep the children safe. She spoke about how one child had been "lost" during visitations and how mother had denied it having been an issue. On another occasion, when one of the children fell and hurt her arm, mother just walked away, stating that she was overwhelmed. Deverman said that there was a continuous theme of "absolutely unresolved trauma" and that mother took no responsibility for what the children had gone through. She said that mother could not even meet the first parenting "benchmark" of being "present" and "in the moment enough to even know what was going on." Two workers were needed in order to ensure the children's safety during visitations.

Two more FSS workers aside from Deverman agreed that mother did not show sustained benefits from parenting education services, and that her parenting skills had not consistently improved. For example, while a therapist was present, mother was attentive to some of the children, but when the therapist left, mother would disengage. The therapist of one of the children echoed what others had said about mother doing well for a time and then having setbacks with her emotional regulation and ability to interact with the children. The therapist reported that mother seemed to lack an understanding of the trauma the children had experienced. In addition, mother failed to follow through with scheduling appointments to discuss the children. Mother appeared wholly uninvested in the "homework" portion of the parenting education and refused to engage in counseling. One of the FSS workers reported that mother was not "a fan of counseling" and did not "feel that it was helpful."

In sum, ample evidence was presented indicating that mother either failed to engage in services altogether, or engaged in services and failed to benefit. See *In re Sanborn*, 337 Mich App at 275 (noting that to be successful, a respondent must not just participate in services but must also benefit from them). On this record, the trial court did not clearly err by finding that mother's issues with parenting, housing, and emotional regulation were not likely to be rectified within a reasonable time considering the children's ages. See MCL 712A.19b(3)(c)(*i*).

Mother next contends that the court erred by relying on MCL 712A.19b(3)(c)(*ii*) because no new conditions were at issue.[2] The court referred to "resource availability" as an issue that was

---

[2] Since we have concluded that termination was appropriate under MCL 712A.19b(3)(c)(i), we need not address the additional statutory grounds because only one statutory ground for termination of parental rights must be established. See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009). However, we do so here for the sake of thoroughness.

mentioned in September 2021, and which became a barrier in the case. It appears that this was an issue from the beginning, given the issue of lack of food mentioned at adjudication. Related to the resource-availability issue, mother contends that the trial court erred by finding that mother had trouble providing meals for the children. But one of the FSS workers testified that she was concerned about mother's ability to feed the children because she had expressed on multiple occasions that she had no money for food and had obtained food for her parenting-time visits from friends. The worker was concerned that mother would not be able to provide food for the children on a daily basis, particularly given that she already struggled to obtain food for parenting-time visits without help. Another FSS worker said that mother was initially bringing food for the children consistently but had lately said she lacked the money to do so. This was despite the fact that mother had a job and had worked out a budget with Gager that should have been sufficient to cover the cost of food for the children. On this record, no error is apparent with regard to the trial court's discussion of the children's meals.[3]

Mother finally contends that there was no evidence that the children would be harmed if returned to her care. See MCL 712A.19b(3)(j). We disagree. Mother had not resolved the many issues that brought the children into care. If the children were returned to her, they are likely to end up in the same deplorable and unsafe conditions that led to their removal. Also, we note that subsection (j) encompasses emotional harm. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). The record clearly indicates that mother never took responsibility for any of the children's trauma. Mother refused to contend with the fact that at least two of the children had accused their stepfather of sexual abuse, going so far as to express regret over reporting the sexual abuse to one DHHS worker. At the time of the termination hearing, mother was still expressing a reluctance to admit that counseling was something the children needed. Based on our review of the record, the trial court did not clearly err in its analysis of MCL 712A.19b(3)(j). Accordingly, for all of the foregoing reasons, statutory grounds were established to support the termination of mother's parental rights.

## B. BEST INTERESTS

Mother next argues that the trial court erred by finding that termination was in the children's best interests. We disagree.

This Court reviews for clear error a lower court's decision that termination is in a child's best interests. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "If a trial court finds that a statutory basis for terminating parental rights exists by clear and convincing evidence, it is required to terminate parental rights if it finds from a preponderance of evidence on the whole record that termination is in the children's best interests." *In re Brown/Kindle/Muhammad*, 305 Mich App 623, 637; 853 NW2d 459 (2014) (quotation marks and citation omitted); see also MCL 712A.19b(5). In making its best-interests determination,

---

[3] Contrary to mother's implication, the court explicitly stated that it was *not* taking into account anything about mother's ability to purchase food at Burger King; it noted that feeding children at Burger King would be prohibitively expensive.

[t]he trial court should weigh all the evidence available to determine the children's best interests. To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (quotation marks and citations omitted).]

The trial court's conclusion about the children's best interests has ample support in the evidence. As noted in our discussion of the trial court's statutory-basis determination, mother stopped her own counseling, took no accountability for what the children had gone through, and had expressed the belief that counseling would not be helpful for the children. The children each had experienced severe trauma, abuse, and in the case of two children, sexual assault. In addition, mother had not shown a sustained benefit in her parenting and supervision skills and did not manage her budget carefully enough to have sufficient money for food. This was a case in which a child was nearly hit by a speeding car, in which children had been burning each other with lighters, in which the children had not been attending school regularly, in which the children were not being fed, and in which a child had a severe foot infection that was ignored by mother. The oldest child expressed that reunification was unwise unless mother became "a better mom" and became less "angry."

Deverman said that the children were flourishing in their placements[4] and were "talking about how they don't want to go back with" mother. Deverman said that the children would behave in foster care but act rambunctious in an excessive way, unlike typical cases, during visitations. She said that the children had been almost feral when living with mother but had responded to limits placed by the foster parents. Gager said that the children were "very" bonded to their foster parents. The children were doing well in school, and one child in particular had shown vast improvement in behavior in the prior year. Gager said that "the foster parents are both willing to adopt the children that they currently have placed with them as well as adopting all of the five children if necessary."

The foster mother of the two youngest children said that, at first, they had had no self-regulation skills and many issues with food. She said that they had improved a lot and could now "calm themselves much easier." One of them would regularly have bathroom accidents after visitations with mother. Those accidents stopped after visitations with mother stopped.

The foster parent for the other three children spoke about how the behaviors of the two middle children had improved after they got IEPs (individualized educational programs). Mother did not attend IEP meetings and had expressed little interest in attending the children's medical appointments. The foster mother said that the children had acted like they were starving, had

---

[4] At the time of the termination hearing, three children were placed in one foster home and two in another.

fought over food, and were "constantly wanting something to eat," but that this behavior had subsided because they now knew food was consistently available. She said that if she ended up with only the three oldest children, she would be willing to facilitate the sibling relationships between them and the two youngest.

Thus, all of the available evidence supports the trial court's best-interests decision. Even so, mother contends that the court failed to consider each child individually. "[I]f the best interests of the individual children *significantly* differ, the trial court should address those differences when making its determination of the children's best interests." *In re White*, 303 Mich App at 715 (emphasis in original). Contrary to mother's argument, the court stated that it had "considered each child individually and [had] concluded that the analysis is the same, or substantially similar for each child." The court did note that there were some differences, mainly with regard to each child's bond with mother. But the bulk of the court's analysis involved issues that applied to all the children; indeed, mother's inability to properly supervise, nurture, and provide for her children applied to all five of them.

Mother also contends that the court erred by stating that the children had a stable environment currently because there have been changes in their foster care environments. But the court explained, "From the sexual abuse to the lack of housing, to the running feral, foster care is the closest thing they've ever had to stability." The court's point was that the children's needs were finally being met. There is no error in the way the court compared the foster environment to the potential placement with mother.

Mother also contends that the children should have been placed with their maternal grandfather and his wife.[5] She appears to be making an unpreserved guardianship argument. To that end, we note that this placement was given a trial run, and a decision was later made that placement of the children with their maternal grandfather was not appropriate because of a lack of timely reporting of issues to DHHS and a violation of a safety plan. In addition, no argument about guardianships or alternative placements was made at the conclusion of the termination hearing. As such, mother has not established plain error warranting appellate relief.[6]

---

[5] Mother contends that the court should have looked into a placement with a friend who could have taken all the children into temporary custody. When mother mentioned this friend, the court responded that DHHS's procedures would be followed. The issue was not developed any further. No error is apparent from the record.

[6] Unpreserved issues are analyzed under the plain-error doctrine. *In re Utrera*, 281 Mich App 1, 8-9; 761 NW2d 253 (2008). Under this doctrine, for reversal to be warranted, a respondent must establish that (1) an error occurred; (2) the error was plain, i.e., clear or obvious; and (3) the plain error affected his or her substantial rights, i.e., affected the outcome of the proceedings. *Id*. at 9; *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019). Additionally, the error must have "seriously affect[ed] the fairness, integrity or public reputation" of judicial proceedings. *In re Utrera*, 281 Mich App at 9 (quotation marks and citations omitted; alteration in original).

## III. CONCLUSION

Mother has failed to show that the trial court erred by finding that statutory grounds existed to support termination of her parental rights, and that termination was in the children's best interests.

Affirmed.

/s/ Michelle M. Rick
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates